730 P.2d 859

**The STATE of Arizona, Appellee,**

v.

**Elton Louis HARRIS, Appellant.**

**No. 2 CA–CR 3547.**

Court of Appeals of Arizona, Division 2, Department B.

May 21, 1986.

Review Denied Dec. 18, 1986.

---

* The Honorable Yale McFate was assigned by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this matter pursuant to A.R.S. §§ 12–145–47.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Tucson, for appellee.

Frederic J. Dardis, Pima County Public Defender by Frank P. Leto, Tucson, for appellant.

## OPINION

LIVERMORE, Presiding Judge.

Defendant, convicted by a jury on one count of sexual assault, dangerous nature, contends that the trial court erred when it admitted possibly contaminated physical evidence, when it did not conduct a hearing into the scientific acceptability of certain evidence, and when it permitted his impeachment with a prior conviction. We find no error and affirm.

In the early morning hours of May 8, 1983, the victim was awakened by an intruder who had gained access to her room at the Doubletree Inn by a sliding glass door. The intruder, who was not masked or otherwise hidden from view, threatened the victim with a knife and forced her to have intercourse with him.

Acting on information provided by a police informant, investigating officers included defendant's picture in a photographic lineup; the victim unequivocally identified him as the assailant. Meanwhile, forensics experts conducted tests on hairs and semen found on the bedsheet taken from the rape scene. In addition to the victim's eye witness account, the jury was permitted to hear expert testimony on the scientific evidence offered to prove that the defendant was included in a class of persons who could have committed the charged offense.

Defendant's first contention is that the court erred when it admitted state's exhibit 4–EEH, consisting of hairs found on the hotel room bedsheet. Because the investigating officer who retrieved the bedsheet transported it on the back seat of his patrol car without first encasing it in an evidence bag, the sheet may have been contaminated with hairs picked up during transport. There being no way to ascertain that the hairs found on the sheet were lost by the rapist, defendant contends the evidence was inadmissible. Initially, the trial court agreed with defendant, suppressing the exhibit and precluding accompanying testimony. However, when later confronted with a claim of discovery abuse, he reversed his position and admitted the evidence as a discovery sanction pursuant to Rule 15.7, Rules of Criminal Procedure, 17 A.R.S.

While otherwise inadmissible evidence cannot be made admissible because of defense misconduct, the issue is not whether the judge's reliance on Rule 15.7 was sound, but whether the hairs and the analytical testimony were independently admissible. If the ruling was proper, it will be upheld, even if the reasoning was erroneous. *State v. Perez*, 141 Ariz. 459, 687 P.2d 1214 (1984). That evidence may have been contaminated generally goes to the weight of the evidence, not its admissibility. *State v. Blazak*, 114 Ariz. 199, 560 P.2d 54 (1977). The likelihood of contamination in this case by the hair of someone else who had been in the patrol car and had hair identical in all fifteen characteristics to that of defendant, while possible, was slight. The matter was fully explored in examination and argued to the jury as to the weight that should be given the evidence. There was no error.

Defendant's second contention is that the trial court erred in admitting expert analysis of semen stains found on the sheets in the hotel room without first conducting an inquiry into the general accept-

ance in the scientific community of the validity of such analyses. See generally *Frye v. United States*, 293 Fed. 1013 (D.C. Cir.1923); *State v. Gortarez*, 141 Ariz. 254, 686 P.2d 1224 (1984); *State ex rel. Collins v. Superior Court*, 132 Ariz. 180, 644 P.2d 1266 (1982). Without foreclosing the need for such an inquiry in future cases, we hold that there was no error in this case. The request was brought to the court's attention on the day of trial by way of a motion in limine filed at 4:28 p.m. the day before. This is untimely under Rule 16, Rules of Criminal Procedure, 17 A.R.S. While a court still has discretion to hear such a motion, its failure to do so was not an abuse of discretion in this case. See *State v. Vincent*, 147 Ariz. 6, 708 P.2d 97 (App. 1985). Because the test employed here had previously been utilized in criminal trials, there was nothing to suggest to the prosecutor the need to assemble experts to demonstrate the scientific validity of the method. The defense knew well before trial that such evidence would be introduced by the state. Indeed the physical evidence was obtained by defense counsel for independent analysis six weeks before trial. To wait to the day of trial to make this motion appears to be an instance of trial by ambush. Necessarily a continuance of the trial would have to be granted in order to gather the experts necessary for a *Frye* inquiry. A court's decision not to allow its calendar to be within counsel's control is not an abuse of discretion.

There is a second reason why no *Frye* inquiry was necessary in this case. No authorities were cited by the defense indicating that there was a lack of scientific acceptance of the technique as it was to be utilized in this case. While courts must guard against the use of unreliable evidence, inquiry need not be made simply because defense counsel announces, in conclusory terms, that evidence is unreliable. The two authorities as cited in defense counsel's memorandum did not indicate such unreliability. Further, they were not readily available to the court nor made available by counsel. Nothing presented, in short, indicated the need for an inquiry.

▮ We hold that when scientific evidence is to be offered, that has been offered and received in other cases, a *Frye* inquiry is necessary only when the opposing party makes a timely request for such inquiry supported by authorities indicating that there may not be general scientific acceptance of the technique employed. While we note that most courts have upheld the use of the technique employed here[1], dried-stain PGM enzyme analysis, also known as electrophoresis, we do not decide its validity. That decision can await a properly conducted *Frye* inquiry in some future trial.

▮ Defendant's final contention is that the trial court erred in permitting his impeachment by a prior felony conviction and by not allowing him to explain the facts underlying that conviction. Given the "centrality of the credibility issue" in a sexual assault case, and the probative value of any felony conviction, the trial court did not abuse its discretion in admitting the conviction for impeachment. See *State v. Williams*, 144 Ariz. 433, 698 P.2d 678 (1985); *State v. Dickson*, 143 Ariz. 200, 693 P.2d 337 (1985); *State v. Harding*, 141 Ariz. 492, 687 P.2d 1247 (1984). Disallowing any explanation follows well-established Arizona law. *State v. Britson*, 130 Ariz. 380, 636 P.2d 628 (1981); *State v. Pavao*, 23 Ariz.App. 65, 530 P.2d 911 (1975).

The judgment is affirmed.

HOWARD and LACAGNINA, JJ., concur.

---

1. See, *Graham v. State*, 168 Ga.App. 23, 308 S.E.2d 413 (1983); *People v. Redman*, 135 Ill. App.3d 534, 90 Ill.Dec. 361, 481 N.E.2d 1272 (4th Dist.1985); *State v. Rolls*, 389 A.2d 824 (Me. 1978); *Robinson v. State*, 47 Md.App. 558, 425 A.2d 211 (1981); *State v. Chavez*, 100 N.M. 730, 676 P.2d 257 (App.1983) *cert. quashed*, 100 N.M. 689, 675 P.2d 421 (1984), *People v. Crosby*, 116 A.D.2d 731, 498 N.Y.S.2d 31 (1986). But see *People v. Brown*, 40 Cal.3d 512, 230 Cal.Rptr. 834, 426 P.2d 516 (1985); *People v. Young*, 418 Mich. 1, 340 N.W.2d 805 (1983).