523 So.2d 562 (1988)
Jerry William CORRELL, Appellant,
v.
STATE of Florida, Appellee.
No. 68393.
Supreme Court of Florida.
January 14, 1988.
Rehearing Denied April 13, 1988.
*563 James R. Valerino, Orlando, for appellant.
Robert A. Butterworth, Atty. Gen. and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
*564 PER CURIAM.
Jerry William Correll appeals his four death sentences imposed for the first-degree murders of his ex-wife, Susan Correll, her sister, Marybeth Jones, their mother, Mary Lou Hines, and the Corrells' five-year-old daughter, Tuesday. We have jurisdiction under article V, section 3(b)(1), Florida Constitution.
On the morning of July 1, 1985, the bodies of the four victims were discovered in Mrs. Hines's home in Orlando. All had been repeatedly stabbed and died from massive hemorrhages; the three older victims had defensive type wounds on their hands. A sheriff's department investigator was called to the crime scene and approximately an hour and a half after his arrival encountered Jerry Correll there. Correll was asked for a statement and subsequently went to the sheriff's department where he gave first an oral and then a tape recorded statement. In his statement, Correll indicated that on the night of the murders he had been drinking and smoking marijuana with a woman, who later drove with him to Kissimmee. While at the sheriff's department, Correll consented to having his fingerprints taken and having pictures of the scratches, cuts and bruises on his hands and forearms taken. The next day, Correll was again interviewed and subsequently arrested. After being advised of and waiving his Miranda rights, Correll gave another statement after his arrest. Several bloody fingerprints and palm prints found at the murder scene were later matched to Correll's. Evidence that he had previously threatened to kill his ex-wife was also admitted. In addition, he could not be ruled out as the person whose bloodstains were found at the scene and whose sperm was found in Susan Correll's vagina.
The jury convicted Correll of four first-degree murders and recommended the death penalty with respect to each of them. The trial court found the following aggravating factors: Correll had been previously convicted of another capital offense; the murder of Susan Correll was heinous, atrocious and cruel and was committed during a sexual battery; the murder of Marybeth Jones was committed during a robbery and for the purpose of avoiding arrest; the murder of Tuesday Correll was heinous, atrocious and cruel, committed in a cold, calculated and premeditated manner and was for the purpose of avoiding arrest; and the murder of Mary Lou Hines was heinous, atrocious and cruel. Finding no mitigating factors, the trial court sentenced Correll to death for all four murders.
Correll raises sixteen issues in this appeal, only six of which require discussion.[*] The first issue concerns the statements he made to police on July 1, 1985, prior to his arrest the following day. Correll contends that these statements should have been suppressed because he was not apprised of his Miranda rights before he gave the statements. Under the dictates of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a suspect involved in a custodial interrogation by law enforcement officials is entitled to the procedural safeguard of the Miranda warning, the key being that the suspect must be in custody. The ultimate inquiry in determining whether a suspect is in custody is "whether there is a `formal arrest or restraint *565 on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quoting Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)).
The record indicates that a sheriff's department investigator asked Correll to go to the sheriff's office so that elimination fingerprints could be taken. Correll agreed to this and was taken to the sheriff's office by his brother and sister-in-law. After his arrival, a detective interviewed Correll for approximately half an hour to one hour because he was a family member of the victims and had information which might have been useful in solving the crime. Correll was not under arrest and was free to leave the station at anytime. He never objected to any of the questions and did not refuse to talk. When the interview was over, Correll left the station the same way he arrived, with his brother and sister-in-law. Therefore, we conclude that Correll was not in custody for the purposes of Miranda and the police were not required to advise him of his constitutional rights. See Roman v. State, 475 So.2d 1228 (Fla. 1985) (no requirement for Miranda warnings where suspect voluntarily accompanied investigators to the station house, was not handcuffed and was interrogated approximately three and one half hours prior to his confession), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986).
The next issue for consideration relates to the admissibility of certain statements made by a witness concerning Susan Correll's fear of Jerry Correll prior to the murders. During Donna Valentine's testimony, the following colloquy occurred:
[STATE]: All right. Now, during this period of time, did she display or exhibit fear of the Defendant?
[VALENTINE]: Yes, she had.
[DEFENSE]: Your Honor, I'm going to object to this once again. This is basically hearsay testimony and doesn't go to any question of whether or not Jerry Correll committed these particular acts.
This is merely a characterization on part of the witness, and I don't think that this is the kind of thing that is anything more than hearsay testimony and opinion testimony on her part.
[STATE]: I asked her to describe what she saw exhibited, not anything that she might have said to her.
[DEFENSE]: That was not the way the question was phrased.
[THE COURT]: With that understanding, the question is: Did she in fact at any time display any fear to you?
[DEFENSE]: Once again, Your Honor, I think that is something that is hearsay and an opinion, and she can say exactly what she did provided it's not merely hearsay.
Whereupon, the court overruled the objection and the following then occurred:
[STATE]: The question was, did Susan Correll display or exhibit fear of the Defendant?
[VALENTINE]: Was she afraid of Jerry?
[STATE]: Did she display anything that appeared to you as fear of the Defendant?
[VALENTINE]: Yes, in language.
Susan Correll's statements, as related by Valentine, were hearsay. In the absence of an applicable exception, hearsay evidence is inadmissible. § 90.801, Fla. Stat. (1985). It is well settled that the state-of-mind exception to the hearsay rule allows the admission of extra-judicial statements only if the declarant's state of mind is at issue in a particular case or to prove or explain the declarant's subsequent conduct. § 90.803(3)(a), Fla. Stat. (1985). Because Susan Correll's state of mind was not at issue and her statements could not be used to prove Correll's state of mind, the testimony was inadmissible. Hunt v. State, 429 So.2d 811 (Fla. 2d DCA 1983); Bailey v. State, 419 So.2d 721 (Fla. 1st DCA 1982); Kennedy v. State, 385 So.2d 1020 (Fla. 5th DCA 1980). However, in view of the other evidence against Correll, we find that the admission of such testimony *566 was harmless error. See Palmes v. State, 397 So.2d 648 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981).
Correll next argues that the trial court erred in granting the state's motion to redact a portion of his statement taken July 1, 1985. The bulk of the statement dealt with Correll's whereabouts on the night of the murders. In the last portion of his statement, Correll accused Susan Correll of being a drug user and dealer and suggested that there were other people with motives for killing her. The trial court determined that the state was not required to put on Correll's defense and granted the motion to redact this portion of his statement.
Ordinarily, a defendant's statement should be introduced into evidence in its entirety, absent totally extraneous matters. However, the trial court here concluded that the matters contained in the last portion of Correll's statement were irrelevant. We cannot say that the judge abused his discretion in so ruling, particularly since he made it clear that Correll was at liberty to introduce the redacted portion himself. Even Correll must not have believed that the redacted portion was of great significance because he did not seek to introduce it in his case-in-chief, even though he presented several witnesses in his defense.
Correll's next point involves the admission of testimony that Correll had slashed Susan Correll's tires some two years prior to the murders in light of evidence that on the night of the murders, the tires of the man Susan was then dating had been slashed outside the ABC Bar sometime after Correll had seen the two of them inside the bar. Before trial, the state filed a notice of intent to offer similar fact evidence, and a hearing was conducted. Defense counsel objected to the admission of this testimony on the ground that it was too remote in time to be relevant, but the trial court ruled it admissible as it went toward lack of mistake, identity and motive.
Correll argues that this testimony violated section 90.404, Florida Statutes (1985), which prohibits the introduction of similar fact evidence when it is used solely to prove bad character or propensity. However, the point is not properly before this Court because of defense counsel's failure to object to the testimony at trial. Even when a prior motion in limine has been denied, the failure to object at the time collateral crime evidence is introduced waives the issue for appellate review. Phillips v. State, 476 So.2d 194 (Fla. 1985); German v. State, 379 So.2d 1013 (Fla. 4th DCA), cert. denied, 388 So.2d 1113 (Fla. 1980). Moreover, even if an objection had been made, the testimony was sufficiently relevant to show that Correll had demonstrated hostility toward Susan on the night of the murders by slashing her boyfriend's tires. Moreover, this evidence tended to prove that Correll was the killer because the keys to Marybeth Jones's car, which had been stolen on the night of the murders, were found on the trunk lid of the car with the slashed tires.
Correll's final argument pertaining to the guilt phase of his trial attacks the testimony of David Baer, an expert in the field of forensic serology, concerning the results of blood tests using the electrophoresis process. The electrophoresis process is a method used to determine the presence of certain enzymes in the blood so that blood may be broken down into more categories than the customary antigen groups of A, B and O. As a result of testing blood samples through the use of this process, Baer was able to express the opinion that certain blood found at the murder scene could have been Correll's but could not have been from any of the victims or from three others who might have been considered to be suspects. Correll argues that the admission of the blood test results obtained through this process was error because the general scientific reliability had not been shown by the state.
At the outset, it is doubtful that the electrophoresis process can be properly characterized as a new method of testing blood. The record in this case reflects that *567 expert testimony predicated upon the electrophoresis process has been regularly admitted in Orange County and throughout the state. Mr. Baer stated that he had testified more than seventy times concerning the results obtained by such testing. This points up the dilemma created by the defense when, during the course of Baer's testimony, it raised for the first time an objection to the validity of the electrophoresis process. One of the reasons given by the judge for denying the objection was its untimeliness in view of the fact that the defense had previously taken Baer's deposition and admitted knowing the basis upon which the objection was to be made before the trial began. We find this case in a posture similar to that in State v. Harris, 152 Ariz. 150, 730 P.2d 859 (Ct.App. 1986), where an objection to expert analysis of semen stains by the electrophoresis process was first raised at the trial. The court observed:
Because the test employed here had previously been utilized in criminal trials, there was nothing to suggest to the prosecutor the need to assemble experts to demonstrate the scientific validity of the method. The defense knew well before trial that such evidence would be introduced by the state. Indeed the physical evidence was obtained by defense counsel for independent analysis six weeks before trial. To wait to the day of trial to make this motion appears to be an instance of trial by ambush.
152 Ariz. at 152, 730 P.2d at 861. Thus, we hold that when scientific evidence is to be offered which is of the same type that has already been received in a substantial number of other Florida cases, any inquiry into its reliability for purposes of admissibility is only necessary when the opposing party makes a timely request for such an inquiry supported by authorities indicating that there may not be general scientific acceptance of the technique employed.
In any event, even if the untimeliness of the objection is disregarded, we cannot say that the judge abused his discretion in permitting Baer to testify concerning the results of his testing by the electrophoresis process. See Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). Baer stated that he had used this method of testing hundreds of times and that the process was used regularly by the FBI. He noted that while there was a controversy in California regarding the accuracy of the test with respect to dried body fluids, such controversy was apparently the creation of one individual who was "opposed by just about everybody in the field." He specifically stated that the consensus of the persons in the field was that electrophoresis was an accurate and reliable test. Significantly, the defense presented no contradictory testimony and relied only upon the authority of People v. Young, 418 Mich. 1, 340 N.W.2d 805 (1983), and People v. Brown, 40 Cal.3d 512, 230 Cal. Rptr. 834, 709 P.2d 440 (1985), for the proposition that such testimony should be rejected. It should be noted that while these two courts concluded that the records before them did not support the reliability of testimony predicated upon the electrophoresis process, a number of other jurisdictions have upheld the admission of such testimony. Jenkins v. State, 156 Ga. App. 387, 274 S.E.2d 618 (1980); State v. Washington, 229 Kan. 47, 622 P.2d 986 (1981); State v. Rolls, 389 A.2d 824 (Me. 1978); Robinson v. State, 47 Md. App. 558, 425 A.2d 211 (1981); State v. Chavez, 100 N.M. 730, 676 P.2d 257 (Ct.App. 1983); People v. Crosby, 116 A.D.2d 731, 498 N.Y.S.2d 31 (1986); Plunkett v. State, 719 P.2d 834 (Okla.Cr.), cert. denied, ___ U.S. ___, 107 S.Ct. 675, 93 L.Ed.2d 725 (1986). There was no error in the admission of Baer's testimony.
Correll next alleges that the trial court improperly found certain aggravating factors as a basis for the judgment of death. Correll first challenges the court's finding that the murders of Tuesday Correll and Marybeth Jones were committed for the purpose of avoiding arrest. In order to support this finding where the victim is not a law enforcement officer, the state must prove beyond a reasonable doubt that the dominant motive for the murder was the elimination of a witness. Doyle v. State, 460 So.2d 353 (Fla. 1984); Menendez v. State, 368 So.2d 1278 (Fla. 1979); Riley v. *568 State, 366 So.2d 19 (Fla. 1978), cert. denied, 459 U.S. 981, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982). We conclude that the evidence in this case supports the finding of this aggravating circumstance. With respect to Marybeth Jones, the facts indicate that she was the last person killed that night as she returned from seeing her boyfriend. It is evident that Correll intended to leave no survivors in the house. All of the telephone lines were cut, and the knife which severed one of the lines was already bloody. Correll was well acquainted with Jones and she could have easily identified him. It is also likely that Correll's daughter, Tuesday, was a witness to the murders. Since the relationship between Tuesday and her father appeared cordial, it is difficult to see why she was killed except to eliminate her as a witness. See Hooper v. State, 476 So.2d 1253 (Fla. 1985), cert. denied, 475 U.S. 1098, 106 S.Ct. 1501, 89 L.Ed.2d 901 (1986).
Correll also challenges the aggravating factor that he previously had been convicted of another capital felony. He alleges that due to this factor's placement in the sentencing order, it was intended to apply only to the death of Mary Lou Hines. However, as we read the order, this factor was intended to apply to all four murders. As to each crime, Correll had already been convicted of three capital felonies even though all four murders were committed in one episode. Therefore, this aggravating factor was properly applied to the murders of all the victims. See King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981). We also find no error with respect to the rest of the aggravating factors and the lack of mitigating factors.
Consequently, we affirm Correll's four convictions and four death sentences.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] The remaining ten issues posed by Correll which we find to be without merit are listed below:

1. The admission of gruesome photographs of the victims.
2. The denial of a request from Correll's public defender to withdraw due to a potential conflict of interest.
3. The refusal to excuse for cause two potential jurors because of their attitudes in favor of the death penalty.
4. Admitting the testimony of David Murray.
5. Sustaining the qualifications of the expert witness who testified concerning bloodstain pattern analysis and crime scene reconstruction.
6. The denial of Correll's motion for a directed verdict of acquittal.
7. The failure to conduct a hearing pursuant to Richardson v. State, 246 So.2d 771 (Fla. 1971), regarding a defense witness.
8. The cumulative errors which entitled Correll to a new trial.
9. The denial of defense counsel's request for additional time to prepare for the penalty phase of the trial.
10. The cumulative errors which contributed to Correll's sentence of death.