549 So.2d 807 (1989)
Bruce Douglas ANDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 87-1835.
District Court of Appeal of Florida, Fifth District.
October 5, 1989.
James B. Gibson, Public Defender, and Barbara L. Condon, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.

*808 ON MOTION FOR REHEARING
PER CURIAM.
We grant appellee's motion for rehearing, withdraw our prior opinion, and in its place, issue the following.
Anderson appeals from his convictions on four counts of engaging in sexual activity with his stepdaughter, a child under eighteen years of age, with whom he stood in a position of familial or custodial authority.[1] We agree that one conviction should be reversed because the child was unable to testify with certainty that Anderson abused her on or between December 4 and December 9, 1985, as was specified in the amended information. We remand this cause for resentencing on the three remaining convictions and direct that the trial court provide for a procedure to determine the amounts to be ordered in restitution in the future for the child's rehabilitation and therapy, in view of Anderson's ability to pay the sums to be required.[2]
Anderson argues that the three remaining counts of sexual battery should be reversed for new trial because the state introduced at trial evidence that Anderson prostituted his stepdaughter to other men, that he sexually abused her almost every day or night for six years since she was nine years old, and that Anderson sexually abused his sister some eighteen years before the trial. We think all of this claimed improper Williams[3] Rule evidence provides no basis for reversal on appeal because no objection was made to its admission at trial. Steinhorst v. State, 412 So.2d 332 (Fla. 1982).
In this case the state filed a notice of intent to offer specified Williams Rule evidence some two months before trial: that for six years (commencing when the child was nine years old) Anderson had vaginal, anal, and oral intercourse with her on an almost daily basis; that he prostituted her to other men; and that he sexually abused his sister some eighteen years prior to the date of the trial. On the first day of the trial, the defense filed a motion in limine as to the proposed Williams Rule evidence, alleging the acts were not sufficiently similar nor specifically described and too remote in time. Prior to commencement of the proceedings before the jury, the trial judge apparently was not asked to rule on the motion.
During the state's opening argument, defense counsel objected to the prosecutor's reference to the collateral evidence. At a bench conference, the trial judge denied defense counsel's motion in limine. Later in the trial when testimony about the collateral crimes was given by Anderson's stepdaughter and sister, no objections were raised by the defense. Further, much of the child's testimony about being prostituted to other men was brought out by defense counsel on cross-examination.[4]
Defense counsel's contemporary objection to the testimony when it is offered at trial is essential to raise the propriety of its admission on appeal. The controlling law is clearly stated in Correll v. State, 523 So.2d 562 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988).
The Court held:
Even when a prior motion in limine has been denied, the failure to object at the time collateral crime evidence is introduced *809 waives the issue for appellate review. Phillips v. State, 476 So.2d 194 (Fla. 1985); German v. State, 379 So.2d 1013 (Fla. 4th DCA), cert. denied, 388 So.2d 1113 (Fla. 1980).
Correll at 566. Because the evidence against Anderson in this case was overwhelming, we reject any suggestion that the admission of any of the claimed erroneously admitted Williams Rule evidence constituted fundamental error. Craig v. State, 510 So.2d 857 (Fla. 1987).
We agree that the sister's testimony was properly admitted under the dictates of Heuring v. State, 513 So.2d 122 (Fla. 1987). These collateral events involving Anderson's sister took place nineteen years before the trial, but those in the Heuring case took place twenty years prior to the trial. With regard to the argument that the abuse of the sister was too remote in time, the court in Heuring noted:
[T]he opportunity to sexually batter young children in the familial setting often occurs only generationally. Heuring sexually battered the young female members of his family when the opportunity arose... . We agree with the district court that the passage of time in this instance did not affect the reliability of the evidence.
Indeed, Anderson's sexual advances against his sister were not successful. The sister was twelve when he abused her; the stepdaughter was fourteen when the acts charged under the indictment took place and nine when the pattern of abuse began. However, exact identity or similarity of crimes is not a requirement under Heuring v. State, 513 So.2d 122 (Fla. 1987). The court said:
[S]ome courts have in effect relaxed the strict standard normally applicable to similar fact evidence. These courts have allowed evidence of a parent's sexual battery on another family member as relevant to modus operandi, scheme, plan, or design. We find that the better approach treats similar fact evidence as simply relevant to corroborate the victim's testimony, and recognizes that in such cases the evidence's probative value outweighs its prejudicial effect.
Heuring at 124-125.
Accordingly, we affirm Anderson's conviction on counts II, III and V, and reverse his conviction on count VI. We remand for resentencing on those three counts, as specified in this opinion.
AFFIRM in part; REVERSE in part and REMAND for resentencing.
COBB, J., concurs.
SHARP, J., concurs and concurs specially with opinion.
COWART, J., dissents with opinion.
SHARP, J., concurring specially.
While I agree in all regards with the majority opinion, I write to address additional issues involved in my decision. I would rule that all of the claimed improper Williams Rule evidence was properly admitted in this case.
The evidence concerning Anderson's sexual activity with the child victim prior to the more recent dates set forth in the indictment (when she was fourteen years old) was necessary in this case to explain why the child victim was unable to pin down the specific dates and circumstances of her ordeals with Anderson. This was because Anderson had sex with her almost every night, beginning when she was only nine years old and ending only when HRS took her away from Anderson's custody and control, at age fourteen. She only survived because she blanked out the present and removed herself mentally from her nightly degradations. As it was, the defense succeeded in having two counts directed in Anderson's favor, because the child was unable to clearly recall the one week out of six years she was not abused nightly. Pathetically, the key to the defense in this case was not when did he rape you, as in a normal rape case, but when did he stop raping you for a short time?
Further, the continuous pattern of sexual abuse committed on this child was necessary and relevant to explain the child's physical condition. At age fourteen, the *810 child was sexually mature. The expert witness [Dr. Frederick Weber, Associate Professor of Pediatrics at Gainesville] testified her cervix and sex organs were in a state consistent with what a doctor would find in examining a married woman. Obviously, she had engaged in frequent sex with someone. Anderson and the child both testified she was never permitted by him to have a boyfriend or a date, or even to attend school regularly, and that she shared the same bed and bedroom as her mother and stepfather for five years.
The child's testimony about being forced by Anderson to have sex with other men for Anderson's pecuniary benefit was but a small wrinkle in the pattern of constant abuse at his hands. He was always present to direct her about how to please his customers. In my view it was a sufficiently collateral aspect of his own abuse to make it admissible as part of the overall pattern of child incest.[1]
COWART, J., dissenting.
The defendant was convicted of four counts of violating section 794.041(2)(b), Florida Statutes (1985) by engaging in sexual activity with his stepdaughter, a child under 18 years of age with whom the defendant stood in a position of familial or custodial authority. In addition to evidence material to the crimes charged and over objection of defense counsel, the trial court allowed the State to introduce testimony of the stepdaughter that at times and places not involved in the acts charged, the defendant made her sleep with other men and made her get in bed and "seduce" other men while the defendant sat at the bedside and watched. The State was also permitted, over objection, to introduce testimony of the defendant's sister that, during the years 1974-1978 when the sister was about 12 years old and the sister and the defendant were living in the same household, the defendant fondled the sister's breasts and made sexual advances towards her.
The conviction on Count VI should be reversed because of lack of evidence that the alleged crime occurred within the dates specifically alleged in the information. See State v. Jefferson, 419 So.2d 330 (Fla. 1982) and Smith v. State, 434 So.2d 18 (Fla. 5th DCA 1983).

EVIDENCE-ADMISSIBILITY-RELEVANCY-MATERIALITY-CORROBORATION
Charge: D defendant is charged with a sexual offense on V victim at T time and P place.
Issue: At trial, the factual issue is simply whether D committed the act charged on V at T time and P place.
Proffer 1:
The State proffers the testimony of witness V that she saw D commit the charged offense on V (herself) at T time and P place. This sworn testimony is admissible, of course, because it directly tends to prove the truth (existence) of the facts in issue and is, therefore, RELEVANT[1] and it relates to the facts in *811 issue and is, therefore, MATERIAL.[2]
Proffer 2:
The State proffers the testimony of witness W that she saw D commit the act charged on V at T time and P place. This sworn testimony is admissible because it is direct evidence ("eye ball" or personal knowledge testimony) which is relevant because it asserts on oath the truth (existence) of the charged act and tends to prove the facts in issue and is material because the facts it tends to prove are the facts in issue. Incidently, the testimony of W corroborates V's testimony in that it adds W's credibility and accuracy to the verification of the same facts verified by V's testimony.[3]
Proffer 3:
The State proffers the testimony of witness V that she saw D commit an identical or similar act on V (herself) at S time and O place. This testimony is not admissible because it is not legally relevant because it does not tend to prove the D-V-T-P act charged and, further, it is not material because it does not relate to the D-V-T-P act charged. It is not relevant in a legal sense in that the D-V-S-O event does not tend to prove the existence of the alleged D-V-T-P event or that D is the perpetrator of the V-T-P event because, reasonably and logically, D can have committed the identical or similar act on V at S time and O place and yet not have committed the charged act on V at T time and P place. Furthermore, V's testimony that D committed a similar act on V at some time and place other than that charged, does not CORROBORATE V's testimony that D committed the act charged for the simple reason that she cannot corroborate herself. Cf. Sampson v. State, 541 So.2d 733 (Fla. 1st DCA 1989) (one victim's testimony may corroborate that of another victim).
Proffer 4:
The State proffers testimony of witness W that she saw D commit an identical or similar act to the act charged on herself (W) or on witness (V) or on some other familial or non-familial person at S time and O place. As in Proffer 3 above, this testimony is not admissible because it does not legally or logically tend to prove the truth or occurrence of the act charged and is, therefore, not legally relevant or material to the issue. This testimony has no proper probative value as to the acts charged and, although probative as a practical matter, its prejudicial nature outweighs its proper probative value under the analysis given above as to the proffered testimony of Witness V as to similar acts by D.

AS TO PROFFERS 3 AND 4
Although reasonably and logically, the fact that a certain person has committed a certain wrongful act in the past does not prove that that person has committed another particular similar act (the charged *812 act), nevertheless, it is the experience of centuries that when an average juror learns that a defendant has committed a particular type of wrongful act in the past, that juror is strongly emotionally inclined to believe that the defendant probably committed the similar act with which he is charged.
This well known phenomenon of jury inclination to believe the defendant did the act charged is the basis for many evidentiary rules of exclusion. The first is exemplified by section 90.403, Florida Statutes, which renders inadmissible even legally relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Another is the rule excluding evidence of the defendant's prior criminal record except as impeachment evidence when he testifies and even there the exception is clothed with many safeguards. See § 90.610, Fla. Stat.; See also, Ehrhardt, Using Convictions to Impeach Under the Florida Evidence Code, 10 Fla.St.U.L.Rev. 235 (1982). Section 90.404, Florida Statutes, directly excludes evidence of a defendant's trait of character to prove that he acted in conformity with it on a particular occasion (i.e., on the occasion of the offense charged). One exception to this last rule of exclusion is the so-called Williams Rule[4] codified in section 90.404(2)(a), which authorizes the admissibility of similar fact evidence "when relevant to prove a material fact in issue." The use of that exception to the general rule is subject to so much danger to a fair trial on the material facts that it has always been clothed with many restrictions and safeguards, both those expressed in the statute and others.
The first rule of the law of evidence is that all relevant evidence is admissible except as otherwise provided. See § 90.402, Fla. Stat. To this rule there is a rather broad vague exception to the effect that even relevant evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. See § 90.403, Fla. Stat. Similar fact evidence (which is a rule of exclusion) is a specifically identified species or class of relevant evidence excluded because the unfair prejudice inhering in this particular type of evidence has been generally held, as a matter of law, to substantially outweigh its probative value. The Williams Rule (which is a rule of admissibility) is an exception to the similar fact rule of exclusion and not "merely a special application of the general rule that all relevant evidence is admissible" because the Williams Rule relates to, negates, or subsumes, only a part of the class of evidence excluded as "similar fact evidence."
As clearly explained by Wigmore,[5] the original and ancient rule of exclusion of similar fact evidence was not based on the fact that such evidence was not relevant but was based on human experience to the effect that such evidence was too relevant, i.e., too convincing. In other words, when the issue in a case is whether or not the defendant did or did not do a particular bad act, when the prosecutor is allowed to show to the jury that in other instances the defendant did a similar bad act, then the jury will not only readily believe that the defendant is morally capable of doing the bad act charged but also that the defendant has a general character defect or propensity to do this type of a bad act[6] and, accordingly, *813 it is highly probable that he did the particular bad act charged. This jury inclination is so strong that on the balance between admissibility because of relevancy and inadmissibility because of the strong likelihood of prejudice, such evidence should be excluded as a matter of law.
Heuring v. State, 513 So.2d 122 (Fla. 1987)[7] and Beasley v. State, 503 So.2d 1347 (Fla. 5th DCA 1987), approved, 518 So.2d 917 (Fla. 1988), surely do not mean that case law has effectively, and unconstitutionally, amended section 90.404(2)(a), Florida Statutes (1985), to make admissible all similar fact evidence that corroborates the testimony of a child victim in every case charging a child sex crime in a familial setting without regard to (1) the strong policy reasons for the general rule of evidence excluding similar fact evidence[8] or (2) all of the other factors limiting the Williams Rule exception, i.e., (a) the necessity that the evidence admissible under the Williams Rule exception relate to a material fact in issue in the particular case, (b) the similarities of the events involved, (c) the remoteness in time of the two events,[9] (d) that the similar fact evidence not become the "feature" of the trial of the charged fact.[10] The underlying reasons for the basic rule of exclusion of similar fact evidence are sound and well explained by the authorities cited in the dissent in Beasley, 503 So.2d at 1351. Heuring and Beasley should not be construed so broadly as to justify the use of the similar fact evidence used in this case.
In Heuring, the court did not hold that defining the scope of Williams Rule type evidence is purely a procedural matter and did not attempt to exercise their rule-making power in the manner done in some other cases.[11] Also, of course, authority aside, the scope of the Heuring decision is not clear and many questions remain. The rationale in Heuring seems to be that the similar fact evidence can be admissible to "corroborate" the testimony of the family member victim. Corroboration evidence refers to evidence material to the criminal charge being tried. In this case, does it really corroborate the stepdaughter's testimony that, at certain times in 1985 the defendant had sexual intercourse with the stepdaughter (the facts charged), for the stepdaughter to testify that at other times and places the defendant depravedly forced the stepdaughter to do uncharged sex acts with other men, or for the defendant's sister to testify that 19 years earlier, when the sister was 12 years old, the defendant deliberately caressed the sister's breast one time? The only thing such "similar fact evidence" really proves, or "corroborates" is that the defendant is possessed of an innate base or depraved character, nature, or propensity that makes him willing or inclined to commit a certain type of sexual *814 wrongful act. This is the very type of evidence that is intended to be excluded by the basic rule excluding relevant but unfairly prejudicial evidence as that rule is codified in section 90.403, Florida Statutes. Most of the case law relating to corroboration evidence arose in an era that was so concerned that sex crime accusations were so "easy to make and hard to refute" that the legal issue in these cases was whether or not the law did, or should, require corroboration of an alleged victim in all criminal cases involving offenses against the chastity of women.[12] A Florida statute (§ 794.022(1), Fla. Stat.) expressly provides that the testimony of a victim need not be corroborated in a prosecution for sexual battery and evidence of the victim's prior sexual conduct is inadmissible (§ 794.022(3), Fla. Stat.).
While Heuring, supra, appears to substantially liberalize the use of similar fact evidence under the Williams Rule, surely that opinion should not be read to hold that the general rule excluding similar fact evidence does not apply in any case where the defendant is charged with a child sex crime in a familial setting and that in that situation all evidence of other alleged similar crimes, wrongs, or bad acts are always admissible to "corroborate" the victim's testimony.
Why is such similar fact evidence to be treated legally different than similar fact evidence in other types of cases? Why is such similar fact evidence less prejudicial and more "corroborative" when it involves family members than when the same misconduct involves non-family members? Granted, there are greater opportunities for a person with that propensity to commit sexual batteries on family members than on non-family members but does Heuring mean that the law has taken judicial notice that defendants have a stronger propensity to sexually abuse family members rather than to sexually abuse non-family members and that evidence of such stronger propensity is less prejudicial to a fair trial than evidence of the weaker propensity to sexually abuse non-family members? So construed, Heuring constitutes a dangerous bend in an ancient road constructed on rules of evidence designed to lead to the fairest of trials. If the objective is to convict the accused, that view of Heuring is the better view; but if the objective is to offset human nature in order to achieve a fairer trial as to the charge being tried, which was the object of the rule excluding this type of evidence, then section 90.403, Florida Statutes, should be applied.
The defendant's convictions under Counts 2, 3 and 5 should be reversed because the testimony of the stepdaughter as to the sex related events at times and places not charged and the sister's testimony as to the remote and dissimilar sex related events were not relevant to prove the identity of the defendant as the perpetrator not to prove "any material fact in issue" nor to corroborate the stepdaughter's testimony as to the charged act and constitutes prejudicial similar fact evidence of propensity and bad character not admissible under the Williams Rule exception as codified in section 90.404(2)(a), Florida Statutes.
NOTES
[1] Section 794.041(2)(b), Florida Statutes, makes it a first degree felony for any person who stands in a position of familial or custodial authority over a child between the ages of twelve and eighteen to engage in sexual activity with such child.
[2] § 948.03(1)(e), Fla. Stat. (1985); McCaskill v. State, 520 So.2d 664 (Fla. 1st DCA 1988); James v. State, 499 So.2d 24 (Fla. 1st DCA 1986); Goodling v. State, 482 So.2d 594 (Fla. 4th DCA 1986); Ballance v. State, 447 So.2d 974 (Fla. 1st DCA 1984).
[3] Williams v. State, 110 So.2d 654 (Fla. 1959); cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); see also § 90.404(2)(a), Fla. Stat. (1985).
[4] For example, on cross-examination, the child said Anderson told her he was going to put her in a lock-house in Louisiana when she turned sixteen, to be a whore; and he told her he was a "voyeur," "whatever that is." The court said, "I didn't understand that." Defense counsel obligingly repeated it.
[1] As an aider and abettor of his daughter's sexual activity with other males, Anderson was a principal in the first degree and could have been additionally charged, convicted and punished as though he had perpetrated the sexual batteries himself. See § 777.011; Clifford v. State, 518 So.2d 983 (Fla. 2d DCA), rev. denied, 525 So.2d 877 (Fla. 1988).
[1] Section 90.401, Florida Statutes, defines relevant evidence as evidence tending to prove or disprove a material fact. Relevancy relates to the relationship between facts. If the existence of one fact or set of circumstances leads, by the natural use of reason, logic and common experience, to reasonable belief in the existence of another fact or set of circumstances, then the first has logical probative value and is relevant evidence to a legal inquiry into the existence or occurrence of the second. See 1A Wigmore, Evidence, Section 37 (Tillers rev. 1983); Ehrhardt, Florida Evidence, Section 401.1 (2d Ed. 1984); McCormick on Evidence, Section 185 (2d Ed. 1972); Graham, Handbook of Florida Evidence, Section 401.1 (1987); Evidence in Florida, CLE, Chapter 2, (2d Ed. 1989). However, whether or not the occurrence or existence of one fact, act, event or condition (Fact B  being the similar fact act in this context) has probative value as tending to prove or convince a juror as to the occurrence or existence of a second fact, act, event or condition (Fact A  being the charged act in this context) does not depend on any rule created by any lawmaking body, legislative or judicial, but depends on whether it has been the general experience of mankind that when Fact B occurs or exists, there is some increased probability that Fact A also exits or has occurred, or will occur. This logically inferential relationship between two facts occurs in nature when there is either some degree of causal connection between the two facts or when both facts have, to some degree, a common causal factor.
[2] Material facts are those facts which relate either (1) to the issues in controversy, or (2) to the credibility of a witness. See 1 Wigmore, Evidence, Section 2 (Tillers rev. 1983); Ehrhardt, Florida Evidence, Section 401.1 at 84 (2d Ed. 1984); McCormick on Evidence, Section 185 at 541-543 (2d Ed. 1972); Graham, Handbook of Florida Evidence, Section 401.1 at 125-126 (1987).
[3] V's testimony can be corroborated in other ways. For instance, if the defendant presents alibi evidence that he was not at P place at T time or, similarly, that on or about T time, the alleged victim V was on or about T time at some place other than P place, then, in rebuttal, the State can present the testimony of X witness that while X did not observe the act charged, X did see D or V at or near P place at T time. This testimony by X, while not directly relevant or material to the act charged, is material to the credibility of witness V and serves both to corroborate V's testimony that D and V were at P place and T time and also tends to impeach the testimony of D's alibi or other rebuttal evidence.
[4] Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[5] 1 Wigmore, Evidence, Section 194 at 646 (3d ed. 1940):

It may almost be said that it is because of this indubitable Relevancy of such [character] evidence that it is excluded. It is objectionable, not because it has no appreciably probative value, but because it has too much.
See also, 1 Jones on Evidence, Section 4:18 at 418 (6th ed. 1972); McCormick on Evidence, Section 190 at 447 (2d ed. 1972); 1 Underhill, Criminal Evidence, Section 205 at 447 (5th ed. 1956); 2 Louisell and Mueller, Federal Evidence, Section 140 at 113 (1978); Hodges v. State, 403 So.2d 1375 (Fla. 5th DCA 1981), rev. denied, 413 So.2d 877 (Fla. 1982) and the dissent in Beasley v. State, 503 So.2d 1347 (Fla. 5th DCA 1987) and in Jackson v. State, 538 So.2d 533 (Fla. 5th DCA 1989).
[6] Based on centuries of observation and consideration, it is also the general conclusion of the common law English and American courts that it is the common experience of mankind that, without regard to legal prohibitions, persons normally do not do certain abnormal sexual acts unless such persons possess strong amoral propensities or inclinations and society generally considers persons who commit such acts to be innately base, wicked and depraved and generally deserving of punishment. The more moral depravity involved in the act in question, the stronger the prejudicial belief in guilt. Child sex offenses are the crimes with the most moral turpitude  so much so that in prison child abusers are the most despised and reviled of all prisoners.
[7] See Note, Corroboration or Propensity? An Empty Distinction in the Admissibility of Similar Fact Evidence, 18 Stetson L.Rev. 171 (1988).
[8] Holt, L.C.J., is quoted as saying in Harrison's Trial, 12 How.St.Tr. 833, 864 (1692) (charge of murder; a witness was called to speak of some felonious conduct of the defendant three years before): "Hold, hold, what are you doing now? Are you going to arraign his whole life? How can he defend himself from charges of which he has no notice? And how many issues are to be raised to perplex me and the jury? Away, away! That ought not to be; that is nothing to the matter." 1 Wigmore, Evidence Section 194, at 647 (3d Ed. 1940).
[9] Interestingly, section 90.610(a), Florida Statutes, recognizes that in civil trials evidence of criminal convictions can be "so remote in time as to have no bearing on the present character of the witness."
[10] See Ehrhardt, Florida Evidence, Section 404.9 at 120 (2d Ed. 1984).
[11] See e.g., Lanca Homeowners, Inc. v. Lantana Cascade of Palm Beach, LTD, 541 So.2d 1121 (Fla. 1988); State v. Whitfield, 487 So.2d 1045 (Fla. 1986); Avila South Condominium v. Kappa Corp., 347 So.2d 599 (Fla. 1977) and Carter v. Sparkman, 335 So.2d 802 (Fla. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977).
[12] See 7 Wigmore, Evidence, § 2061, (Chadbourn Rev. 1978).