578 So.2d 793 (1991)
Robert L. TRAVERS, Appellant,
v.
STATE of Florida, Appellee.
No. 88-2791.
District Court of Appeal of Florida, First District.
April 18, 1991.
*794 J. Peter France, Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen., Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Appellant raises several issues in this appeal of a judgment of conviction for two counts of sexual battery on a child under twelve years of age, and two counts of lewd and lascivious assault on or in the presence of a child under fourteen. Appellant claims that the trial court erred in denying his motion for a judgment of acquittal; that a new trial is warranted because of improper conduct by the prosecutor, and because the trial court improperly inserted itself into the proceedings. Appellant also assigns as error the trial court's restriction of his cross-examination of the principal police investigator and the denial of appellant's proposed jury instruction concerning "Williams rule" evidence. Finally, appellant argues that these errors, if individually insufficient, are cumulatively prejudicial to warrant a new trial. Upon review of the arguments made and the record of the trial below, we find no reversible error and affirm.
Appellant and his wife periodically cared for the alleged victim and her older sister from November 1982 until July 1986. Unfortunately, both girls suffer from neurofibromatosis, the older child having an especially severe case. The sexual batteries complained of allegedly took place between January 1, 1984, and July 19, 1986. The last occasion on which the batteries could have occurred was a time when the victim, her older sister, and their mother came from Pensacola to Fort Walton Beach to attend a neurofibromatosis charity function on a weekend in July 1986. At this time the older child was six years of age, the younger child five. While in Fort Walton Beach, they stayed in the home of appellant and his wife, who were active in charity functions related to this disease. The mother testified that both children requested to sleep with appellant and his wife, and during this sleep-over the appellant allegedly committed some acts of abuse on the older child.
Because of a dispute between the victim's mother and the appellant's wife that weekend over the use of charity funds, the mother left appellant's house and returned home with her children. Later, after the mother noticed what appeared to be blood on the older child's underpants, she contacted the family's pediatrician with the concern that the girl had been abused. The older child was physically examined and was interviewed by the Child Protection Team. Physical abuse was suspected, and appellant was arrested and charged with lewd and lascivious acts in the presence of a child. Appellant entered a plea of nolo contendere to this charge. At the time of appellant's arrest for offenses committed against the older girl, the younger girl, the alleged victim in the present case, gave no indication of abuse after questioning by her mother.
Nearly a year after the act of battery was committed on the older child, however, the younger child indicated to her mother that the appellant had sexually battered her. The child was physically examined and was interviewed by the Child Protection Team. A physician member of the team found injuries to the child's genitalia consistent with forced entry of an object, but he was unable to give an estimate of the time when these injuries occurred, other than to state that the condition did not occur within the few days prior to his examination; that the condition he found was not a "one-time injury;" and that it could have occurred weeks, or two or three years, prior to his examination. Appellant *795 was eventually arrested and charged by information with sexual battery on a child under twelve by oral penetration, sexual battery by vaginal penetration, and two counts of lewd and lascivious acts upon a child under the age of fourteen. Trial was held in June 1988, and appellant was found guilty of all charges.
Turning to the issues on appeal, we find that the trial court did not err in submitting the case to the jury. As conceded by trial counsel in his motion for judgment of acquittal, the state presented ample evidence through its medical witnesses to establish the physical indicia of penetration of the victim. In addition, the victim gave testimony in graphic detail of the several kinds of sexual abuse inflicted upon her by appellant. Her recollection of details as to time and place, and other circumstances surrounding the offenses, was in part vague or nonexistent, but not unusually so considering her age and the time frame in which the events recalled by the victim occurred. Any conclusions as to her credibility that might be drawn from the manner in which she responded to questions in court would be a matter solely for the jury.
Next, we have considered the various instances of alleged trial misconduct on the part of the prosecutor, and we find that in each instance where objection was made, it was sustained by the trial court. One of the instances of alleged misconduct occurred during closing argument. Upon objection, the trial court sustained the objection, and the prosecutor was promptly admonished by the trial court to confine his remarks to comments on the evidence. No motion for mistrial was made at any time. Upon consideration of the entire record, we are of the view that none of the cited instances of alleged misconduct by the prosecutor were likely to have improperly influenced the jury's verdict. See Walker v. State, 483 So.2d 791 (Fla. 1st DCA), rev. denied, 492 So.2d 1336 (Fla. 1986) (alleged prosecutorial improprieties viewed in context of the record as a whole to determine whether they constitute sufficient prejudice to warrant new trial).
Appellant next argues that the trial court acted improperly in connection with the young victim's in-court identification of the appellant. When first asked if she saw the appellant, whom she knew as "Paw-Paw" in the courtroom, the victim answered, "No, sir." On further questioning, she stated that she knew Betty Travers, wife of the appellant; that she was known to her as "Nanna"; that "Paw-Paw" and "Nanna" lived in a trailer in Fort Walton Beach, and that she had stayed there with them. Upon objection by defense counsel on the grounds that the victim had not identified the appellant, the trial judge, at a bench conference, stated that he wanted the child to "get up and walk around the courtroom once again to see if she identifies the defendant." The judge further stated: "If she can't identify the defendant, I'm not going to allow her to testify." There was no objection to the trial court's suggested procedure; in fact, both counsel agreed that this should be handled by the court. The judge then stated to the witness, in the presence of the jury: "It's a little dark in the courtroom. Would you mind getting up from the witness stand and just walk around the courtroom, and tell us if you see the person you know as Paw-Paw or Robert Travers?" After a lapse of twenty-five seconds, the child pointed out the appellant.
We agree, as appellant urges, that a trial court should "scrupulously avoid commenting on the evidence in a case." Lee v. State, 324 So.2d 694, 698 (Fla. 1st DCA 1976). We do not agree, however, that the trial court acted improperly in this case. The comment, "it's a little dark in the courtroom," was no doubt intended as an explanation of why the procedure of having the witness walk around in the courtroom was necessary. It is arguable that this statement can be interpreted as an explanation or excuse for the failure of the witness to identify the appellant when first asked. Perhaps the witness could have been better instructed without the trial court's use of these words. However, there was no objection to the trial court's statement, nor to the procedure of having the witness walk *796 out into the courtroom. Indeed, as already noted, both counsel agreed to this procedure. We conclude, moreover, that the effect on the jury would have been essentially the same without the words of the judge, since the jury would surely have surmised that the courtroom walk by the witness was being ordered because the witness had not been able to identify appellant from the witness stand. In any event, we are unable to agree that this remark rises to the level of a "comment on the evidence," and we find no error on this issue.
Appellant also contends that the trial court erred in restricting cross-examination of the state's principal law enforcement investigator, Busey Joyce. In a pretrial ruling, the court granted the state's motion in limine to preclude the defense from presenting evidence that the investigator, Busey Joyce, was instructed by the assistant state attorney not to seek an arrest warrant in the present case until the sentencing in the prior case, involving the older child, was completed. The state contended that the timing of the application for and service of the arrest warrant was irrelevant, and therefore inadmissible. Appellant argued below, as here, that the delay in service of the warrant was motivated by concern, among prosecution and law enforcement personnel, that if appellant was made aware of the second warrant he might move to withdraw his plea of nolo contendere in the first case and demand a trial. Appellant argues that the evidence was relevant to show the animus or bias on the part of the investigator, and thus to weaken the credibility of her adverse testimony concerning statements made to her by appellant at the time of his arrest.
We find no abuse of discretion in the court's ruling. Notwithstanding the ruling on the motion in limine, the record reveals that appellant was allowed to extensively cross-examine Investigator Joyce concerning her investigation of both cases, and to elicit testimony from her, after impeachment, disclosing her dissatisfaction with the sentence received by appellant in the first case. She was also examined and permitted to testify as to the time and place of her arrest of appellant on the present charges. We find that very little would have been added to her testimony by admission of the proffered cross-examination which was excluded. On proffer, Investigator Joyce testified that there was concern that service of the warrant before disposition of the first case might result in appellant's attempt to withdraw his plea in that case. She testified that the warrant was issued on July 9, 1987 (the arrest was made on July 13, 1987). She testified further that she asked the assistant state attorney what to do about service of the warrant, and received his advice, as was her standard practice. Following the proffer, the court reiterated the prior ruling that matters regarding the timing and service of the second warrant were collateral to the issues in the case being tried, and were therefore inadmissible. No abuse of the trial court's discretion has been shown with respect to denial of the proffered cross-examination. Moreover, any error in the trial court's ruling under the circumstances would be harmless.
We likewise find no error in the trial court's addition of the phrase "pattern of criminality" in giving the standard Williams rule[1] instruction as it appears in Florida Standard Jury Instructions in Criminal Cases. While "pattern of criminality" is not one of the permissible uses of Williams Rule evidence listed in section 90.404(2)(a), Florida Statutes (1987), that list is not exhaustive, but only illustrative. See Ehrhardt, Florida Evidence, § 404.17; see also, cases holding that similar fact or Williams rule evidence is admissible to show pattern of criminality in child's sexual abuse cases: Cotita v. State, 381 So.2d 1146 (Fla. 1st DCA 1980), rev. denied, 392 So.2d 1373 (Fla. 1981); Coleman v. State, 485 So.2d 1342 (Fla. 1st DCA 1986).
We have also considered, and reject, appellant's contention that the cumulative errors complained of mandate a new trial.
*797 Finally, one additional and somewhat unusual aspect of this case will be addressed. Prior to trial, the prosecution gave notice of its intent to use, as Williams rule evidence, the circumstances of the elder child's abuse. No objection to this evidence was made below, and appellant concedes on appeal that this evidence was properly admitted. However, notwithstanding the absence of argument directed to the issue specifically, we have noted from our review of the record that much of the evidence at trial concerned abuse of the older, rather than younger child. More particularly, three medical doctors testified exclusively about the older child's case. A member of the child protection team who did testify about the younger child nevertheless spoke at length about the older child as well. Moreover, the mother provided lengthy and vivid testimony about her older daughter's battery, and the older child gave explicit testimony about her abuse by appellant, but offered no testimony whatsoever concerning abuse of her sister. Because of the pervasiveness of the evidence involving the older child, we have turned our attention to this aspect of the case as well, although no contention is made on appeal that there was any error in allowing its introduction.
We note, initially, that there was no request for a limiting instruction at the time the evidence concerning the sexual molestation of the older child was introduced, and none was given by the court. Section 90.404(2)(b)2, Florida Statutes, requires such preliminary instruction only if requested. An instruction at the close of the evidence on the limited purpose for which the evidence was received, which is required by the same section, was given by the court.
The admission of excessive evidence of other crimes to the extent that it becomes a "feature of the trial," especially in the absence of a limiting instruction at the time such evidence is received, has been recognized as fundamental error requiring reversal. Green v. State, 228 So.2d 397 (Fla. 2d DCA 1969), cert. denied, 237 So.2d 540 (Fla. 1970); Davis v. State, 276 So.2d 846 (Fla. 2d DCA 1973), affirmed, State v. Davis, 290 So.2d 30 (Fla. 1974); and cf., Marion v. State, 287 So.2d 419 (Fla. 4th DCA), cert. denied, 294 So.2d 91 (Fla. 1974) (not fundamental error under circumstances, where limiting instruction was given). The court in Davis v. State, supra, recognized the error as fundamental although not raised in the defendant's brief on appeal. See also, Dydek v. State, 400 So.2d 1255 (Fla. 2d DCA 1981) (appellate court may consider fundamental error not raised below nor argued on appeal); Robinson v. State, 462 So.2d 471 (Fla. 1st DCA 1984), rev. denied, 471 So.2d 44 (Fla. 1985) (reversal for "fundamental injustice" under Rule 9.140(f), Florida Rules of Appellate Procedure).
We have therefore considered this issue, sua sponte, in order to determine whether this case constitutes one of those rare instances where the interests of justice demand that the error be deemed fundamental because "it reaches into the very heart of the proceeding." Peterson v. State, 376 So.2d 1230, 1234 (Fla. 4th DCA 1979), cert. denied, 386 So.2d 642 (Fla. 1980). See, Brown v. State, 124 So.2d 481 (Fla. 1960) (in order for an error to be considered fundamental, it must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the error); Clark v. State, 363 So.2d 331 (Fla. 1978) (fundamental error is error which goes to the foundation of the case or goes to the merits of the cause of action); and Castor v. State, 365 So.2d 701 (Fla. 1978) (to be fundamental, the error must amount to a denial of due process); but see, Anderson v. State, 549 So.2d 807 (Fla. 5th DCA 1989), rev. denied, 560 So.2d 232 (Fla. 1990).
Evidence of similar facts is admissible for limited purposes, such as proof of identity, intent, and motive. Section 90.404(2)(b)(2), Florida Statutes. However, such evidence is inadmissible to prove bad character or the propensity of the accused to commit the crime, and as with all evidence, Williams rule evidence is inadmissible under section 90.403 if its probative value is substantially outweighed by undue prejudice. One of the better known expressions *798 of this standard is that evidence of collateral crimes "may not make such crimes a feature of the trial instead of an incident... ." Ashley v. State, 265 So.2d 685, 693 (Fla. 1972). The danger is clear: "[e]vidence that the defendant committed a similar crime, or one equally heinous, will frequently prompt a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty." Nickels v. State, 90 Fla. 659, 685, 106 So. 479, 488 (1925).
The evidence of appellant's collateral offenses against the older girl clearly became a "feature" of this trial, both with respect to the quantum of evidence presented and the arguments of counsel. In his opening statement, the prosecutor told the jury that "the evidence will show ... that this case deals with two young children." Our review also discloses, however, that defense counsel on voir dire of the jury announced that the incident involving the older child, and appellant's plea of nolo contendere to the charge involving that child, was going to be "a feature of this case." Moreover, it is clear from examination of the trial record that the circumstances surrounding appellant's plea in the earlier case, and other extraneous matters concerning that offense, formed a major part of the defense in this case. It was appellant's contention that considerations for the health of the older child motivated him to plead nolo contendere in the first case, and that dissatisfaction with his sentence in that case (community control, followed by probation), on the part of the child's mother and law enforcement officials, and the mother's interest in pursuing civil litigation against him, prompted the initiation of criminal proceedings concerning the younger child. We conclude, therefore, that the possible excessive emphasis on the prior criminal proceeding that occurred in the present case was attributable for the most part to the defensive efforts of the appellant. Under these circumstances, the excessive use of the "other crime" evidence does not lend itself to review and reversal as fundamental error. See, Snowden v. State, 537 So.2d 1383 (Fla. 3d DCA), rev. denied, 547 So.2d 1210 (Fla. 1989) (where defendant's trial tactics and strategy causes the similar fact evidence to outweigh the evidence directly relating to the crime charged, the disparity may be disregarded entirely).
The judgments of conviction and sentences are AFFIRMED.
MINER and WOLF, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); codified at section 90.404(2), Florida Statutes.