614 So.2d 1092 (1993)
Michael Alan LAWRENCE, Appellant,
v.
STATE of Florida, Appellee.
No. 76399.
Supreme Court of Florida.
March 11, 1993.
*1093 Nancy A. Daniels, Public Defender and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Michael Lawrence appeals his convictions of first-degree murder and kidnapping[1] and his death sentence. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the conviction of first-degree murder but vacate the death sentence and remand for resentencing.
Shortly before midnight on September 29, 1986, a woman called the Pensacola police to report that, when she entered a convenience store, the cash register drawer was open and the store appeared to be unattended. Police arrived shortly afterwards and, after searching the premises, found the clerk face down in a storeroom, dead from two gunshot wounds to the head. In March 1987 Pensacola police arrested Lawrence for burglary. While incarcerated, he made statements to another *1094 inmate, Melvin Summerlin, about the convenience store murder. He also mentioned Sonya Gardner, who, when the police interviewed her, stated that she had been with Steven Pendleton and Lawrence when they went to the convenience store to rob it, although she did not enter the store. Gardner also stated that Lawrence confessed killing the victim to her. After being convicted of the March 1987 burglary, Lawrence was sent to the Okaloosa Correctional Institution, where he discussed the murder with Larry Sutton, another inmate.
Sutton contacted the authorities and told them about Lawrence's involvement in the convenience store murder. In April 1989 the state indicted Lawrence for first-degree murder, kidnapping, and armed robbery. Summerlin, Gardner, and Sutton, among other people, testified at Lawrence's trial. The jury convicted Lawrence as charged and recommended that he be sentenced to death. After finding that seven aggravators and no mitigators had been established, the trial judge imposed a death sentence.
Prior to trial, the state filed eight notices of its intent, pursuant to subsection 90.404(2), Florida Statutes (1989),[2] to offer similar fact evidence of other crimes. In response to these notices, Lawrence filed a motion in limine objecting that the similar fact evidence was not relevant to any material fact at issue in the charges against him in this case. After hearing both sides, the court denied the motion. Lawrence now identifies seven acts that the state introduced evidence about, and, although he concedes that any error in admitting the individual bad act evidence may be harmless, he argues that admitting evidence of all seven acts constituted reversible error collectively.
As we have held previously, "any fact relevant to prove a fact in issue is admissible into evidence unless its admissibility is precluded by some specific rule of exclusion." Williams v. State, 110 So.2d 654, 658 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). "If the proffered evidence is relevant to a material fact in issue, it is admissible even though it points also to a separate crime." Id. at 660. Therefore, "evidence of other crimes is admissible if it" shows "either motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality." Ashley v. State, 265 So.2d 685, 693 (Fla. 1972).
The contemporaneous objection rule applies to evidence about other crimes, and, even if "a prior motion in limine has been denied, the failure to object at the time collateral crime evidence is introduced waives the issue for appellate review." Correll v. State, 523 So.2d 562, 566 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988). Because Lawrence did not object to the following testimony, complaints about it have not been preserved for appeal: 1) Lawrence told Steven Pendleton to get rid of a package;[3] 2) Lawrence tried to rob the same convenience store, but lost his nerve;[4] and 3) *1095 Lawrence was addicted to cocaine for which he needed money.[5]
To show that Lawrence had access to firearms, Summerlin, Georgia Crowell, and Fayron Harrison testified that he had stolen two handguns from Harrison's car. See Bryan v. State, 533 So.2d 744 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989); Amoros v. State, 531 So.2d 1256 (Fla. 1988). Lawrence did not object to Summerlin and Harrison's testimony, only to Crowell's, so only that testimony can be attacked on appeal. Lawrence's access to weapons is sufficiently relevant to permit Crowell's testimony. Furthermore, because it was cumulative it was harmless.
To show that Lawrence had access to a .22 caliber handgun, the caliber weapon that killed the convenience store clerk, Gerald Anweiler testified that a .22 caliber pistol was missing from his girlfriend's home after a visit by Lawrence. Lawrence objected, questioning the relevancy of this testimony, the court charged the jury on the limited purpose for which the testimony was being received,[6] and Lawrence cross-examined Anweiler extensively. Even assuming admitting Anweiler's testimony to be error, in light of the curative instruction and the cross-examination it was harmless. See Haliburton v. State, 561 So.2d 248 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991).
The remaining items Lawrence complains about came out during Sutton's testimony. According to Sutton, Lawrence told him that, after starting to use a lot of cocaine, he quit his job and "began to jiggle old women out of their money." Lawrence objected at this point, but did not give a basis for the objection. The court told the witness to focus on the instant case, and both sides agreed that would be fine. The statement about jiggling old women is irrelevant, and its admission was error. Those few objectionable words, however, did not become a feature of the trial, and there is no reasonable possibility that this error contributed to the conviction. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Admission of the statement, therefore, was harmless.
Sutton also testified that Lawrence told him he was messed up on drugs,[7] that he called a woman named Linda and told her not to testify against him on the 1987 burglary charges,[8] and that Linda needed killing. Lawrence objected pretrial to anything about this threat being admitted and moved for a mistrial when Sutton mentioned it. The court instructed the jury to disregard Sutton's last comment, and the state never mentioned it again.[9] As with Sutton's other comment, allowing testimony about this threat was error. Again, however, we see no reasonable possibility that this error affected the jury's verdict, and it was, therefore, harmless. The evidentiary errors individually or collectively were of insufficient gravity to warrant a new trial.
Lawrence also argues that the court erred in allowing Sutton's testimony at all because Sutton was a state agent and deliberately and improperly elicited incriminating statements from him. After conducting a hearing on Lawrence's motion to suppress Sutton's testimony, the trial court denied it. The facts of this case support the trial court's ruling and show that Sutton was placed in administrative confinement only for his protection, not to pump Lawrence for information; that no one tried to conceal that Sutton took notes in an attempt to get a favorable clemency recommendation; and that, although Sutton had acted as a confidential informant in the past, he had never asked for assistance in exchange for doing so. Lawrence, therefore, has shown no error in allowing Sutton to testify. Johnson v. State, 608 So.2d 4 (Fla. 1992); Maqueira v. State, 588 So.2d 221 *1096 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1961, 118 L.Ed.2d 563 (1992).
Lawrence's conviction of first-degree murder is supported by competent, substantial evidence. Because no reversible error occurred, we affirm that conviction. We cannot, however, affirm his conviction of kidnapping.
If moving a victim around
"is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."
Faison v. State, 426 So.2d 963, 965 (Fla. 1983) (quoting State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (1976)); Ferguson v. State, 533 So.2d 763 (Fla. 1988). The test set out in Faison has not been met here. Gardner testified that she saw the victim moving toward the back of the store, but that she was not paying much attention. The state produced no evidence showing that Lawrence forced the victim into the storeroom, and we hold that the kidnapping conviction is not supported by the evidence.
In support of the death sentence the trial court found that the following aggravators had been established: 1) under sentence of imprisonment; 2) previous conviction of violent felony; 3) committed during a kidnapping and robbery; 4) committed to avoid or prevent arrest; 5) committed for pecuniary gain; 6) heinous, atrocious, or cruel; and 7) cold, calculated, and premeditated. On appeal Lawrence argues that the court erred in finding aggravators 4, 6, and 7.
The evidence does not support finding the murder to have been committed in a cold, calculated, and premeditated manner. Lawrence intended to rob the store and to that end procured a handgun. The state, however, failed to present sufficient evidence of the heightened premeditation needed to support finding this aggravator. See Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). We also agree with Lawrence that the state did not prove beyond a reasonable doubt that the dominant motive for the murder was to avoid or prevent arrest. E.g., Menendez v. State, 368 So.2d 1278 (Fla. 1979). Moreover, nothing sets this murder "apart from the norm of capital felonies," thus making it heinous, atrocious, or cruel. State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Additionally, because we found the kidnapping not to be supported by the evidence, the felony-murder aggravator is supported only by the robbery, and that aggravator and the pecuniary-gain aggravator should have been considered together as a single factor. E.g., Bruno v. State, 574 So.2d 76 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991).
Thus, we are left with three aggravators (under sentence of imprisonment, prior violent felony, and felony murder/pecuniary gain). Regardless of the erroneously found aggravators, "[i]f there is no likelihood of a different sentence, the error must be deemed harmless." Rogers, 511 So.2d at 535. Here, however, due to the peculiar facts of this case, we cannot find the error in instructing the jury on and finding these inapplicable aggravators to be harmless.
As discussed earlier, the state relied heavily on similar fact evidence of other crimes, and we held that, in those instances that had been preserved for appeal, any error regarding the introduction of that evidence was harmless as to Lawrence's conviction. We are not convinced, however, that any error would be equally harmless in regards to his death sentence. As we have stated before: "Substantially different issues arise during the penalty phase of a capital trial that require analysis qualitatively different than that applicable to the guilt phase. What is harmless as to one is not necessarily harmless as to the *1097 other." Castro v. State, 547 So.2d 111, 115 (Fla. 1989). In the penalty phase the state relied on the evidence presented at the guilt phase. On this record we cannot say that the state has shown beyond a reasonable doubt that the similar fact evidence of other crimes did not affect the penalty phase. Therefore, we vacate Lawrence's conviction of and sentence for kidnapping, and, although we affirm his other convictions, we vacate his death sentence and direct the trial court to empanel a jury and conduct a new penalty proceeding.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Lawrence does not appeal his conviction of armed robbery, but we affirm that conviction because it is supported by competent, substantial evidence.
[2] This statute reads as follows:

(2) OTHER CRIMES, WRONGS, OR ACTS. 
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
(b)1. When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a), no fewer than 10 days before trial, the state shall furnish to the accused a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeachment or on rebuttal.
2. When the evidence is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered. After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information.
[3] A single witness testified to this.
[4] A single witness testified to this.
[5] Several witnesses mentioned Lawrence's drug use.
[6] § 90.404(2)(b)(2), Fla. Stat. (1989), n. 2 supra.
[7] Lawrence did not object to this.
[8] Lawrence did not object to this.
[9] Lawrence later cross-examined Sutton about this threat.