824 So.2d 943 (2002)
Robert Allen STIRES, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-3080.
District Court of Appeal of Florida, Fifth District.
July 26, 2002.
Rehearing Denied September 5, 2002.
*944 James B. Gibson, Public Defender, and Brynn Newton, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Daytona Beach, for Appellee.
PLEUS, J.
Stires appeals judgments and sentences for two counts of DUI manslaughter and one count of DUI with bodily injury. We affirm, but write to discuss his argument that the trial court erred in denying his motion for mistrial when the prosecutor told the jury in closing argument that they had to find Stires "totally blameless" to acquit.

Facts
Shortly after midnight on February 19, 2000, Stires' Jeep collided with Danielle Werner's Toyota Corolla at the intersection of State Road 50 and U.S. Highway 98 (McKethan/Olancha Road) in Hernando County.[1] Werner and Chelsea Druzbick, the left rear passenger, both died as a result of head injuries caused by the front end of Stires' Jeep striking the left side of Werner's Toyota. Jennifer Smith, the right front passenger in Werner's car, suffered numerous injuries but survived. A blood test revealed that Stires had a blood alcohol level of .176 grams of ethyl alcohol per 100 milliliters of blood.
The main issue at trial was whether Stires' operation of his vehicle caused or contributed to the victims' deaths. In fact, both parties agreed that the primary issue was causation, or as they put it, who had the green light. Stires, who was traveling east on SR 50, maintained, both at the scene and the hospital, that he had the green light. He explained to FHP Sergeant Tobin that he had been going about 60-65 mph when he saw Werner's car *945 approaching the intersection from the south on McKethan Road. He slowed down to around 50 mph, wondering if her vehicle was going to slow down or stop, but it did not. He said Werner's vehicle was doing "45 at the slowest" at the time of the crash.
The only other eyewitness to the accident was Ken Benson, who testified that he was traveling south on Olancha Road toward the intersection with SR 50. As he drove over the crest of a hill about 40 yards from the intersection, he noticed that his light was green. He thought this was unusual because the light was "always red when I come through here." Benson saw a northbound vehicle on McKethan that had slowed to a stop in the left turn lane. Benson said the oncoming vehicle had plenty of room to turn before he approached the intersection and began to make the left turn onto SR 50, when another car "came from out of nowhere" and there was "an explosion." He estimated that the maximum speed of the northbound vehicle at the time of impact was 15 to 20 mph because it had been at a dead stop before it started to turn.[2]
Hernando County Traffic Supervisor David Bland testified that the traffic light at the intersection goes into "green rest" to give the east- and westbound traffic on SR 50 the right-of-way until a north- or southbound vehicle trips a detector on Olancha or McKethan Road. When that happens, the light for SR 50 turns yellow, then red, and when it has been red for "so many seconds," it turns green for the north- and southbound traffic.
FHP Corporal Parnell performed the traffic homicide investigation. He estimated that Werner's car was traveling between 10 and 15 mph at the time of the crash because the entire crash site was contained within the intersection. He testified that her car could not have been traveling 45 mph because both cars would have traveled a greater distance from the initial crash site at that speed. Parnell concluded that excessive speed did not contribute to the accident.
During the prosecutor's closing argument, he stated:
But on the other hand, causation is the issue in this case, and we're rolling right into it.
Caused or contributed to the cause. And the Judge will send you back with one of these little booklets which are instructions that you're going to get and the jury instructions is the law in this case, and, of course, is the law you're going to follow. And it says did Robert Alan Stires cause or contribute to the cause of the deaths. And what that means is that in any part if he assisted in the cause, he's guilty. You have to find him totally blameless, a non-contributor.
(Emphasis added). Stires objected to this argument on the ground of burden shifting. After a discussion at the bench, the trial judge instructed the jury as follows:
Ladies and gentlemen, attorneys and judges are trained to very concerned about little issues, and those may or may not concern you. But I'm not saying there's anything that has been done wrong here, but I just want to repeat what I said earlier. Arguments of the attorneys are not your instructions on the law. Any instructions on the law you'll get from the Court as soon as we finish the arguments. Okay?
*946 Stires was found guilty as charged of both counts of DUI manslaughter and guilty of the reduced charge of DUI with bodily injury.

Analysis
A trial court's ruling on a motion for mistrial is subject to an abuse of discretion standard of review. Ford v. State, 802 So.2d 1121 (Fla.2001). Arguments that shift or lessen the burden of proof are improper. See, e.g., Shaw v. State, 783 So.2d 1097 (Fla. 5th DCA 2001) (argument that burden was met by proving defendant's faculties were lessened instead of impaired was reversible error). The words, "you have to find him totally blameless," improperly shift the burden of proof because a jury does not have to "find" a defendant innocent or "blameless" to acquit; he is presumed innocent. A jury may believe a defendant is "blameworthy" but still acquit if they have a reasonable doubt as to one of the elements of the crime.
The state argues that the prosecutor's argument was an accurate paraphrase of the law, citing the Florida Supreme Court's statement in Magaw v. State, 537 So.2d 564 (Fla.1989) that:
We caution, however, that the statute does not say that the operator of the vehicle must be the sole cause of the fatal accident. Moreover, the state is not required to prove that the operator's drinking caused the accident. The statute requires only that the operation of the vehicle should have caused the accident. Therefore, any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice.
Id. at 567. While the state's argument is well taken, the prosecutor's poor choice of words still suggests that the jury has to find the defendant innocent of any wrongdoing in order to acquit. That is not the standard. They need only have a reasonable doubt about his guilt to acquit. See Fla. Std. Jury Instr. (Crim.) 2.03 ("The defendant is not required to present evidence or prove anything."). Therefore, the prosecutor erred.
The state, however, correctly argues that this type of error is subject to harmless error analysis. See Jones v. State, 653 So.2d 1110 (Fla. 4th DCA 1995) (state's comment on defendant's failure to produce evidence was not harmless in light of conflicting evidence). Under this analysis, the state must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict, or, stated alternatively, that there is no reasonable possibility that the error contributed to the conviction. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Application of the rule "requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." Id. at 1135.
In the instant case, an examination of the permissible evidence reveals that the central issue was causation. Stires, who was traveling eastbound on SR 50, maintained at the scene and the hospital that he had the green light. He explained to FHP Sergeant Tobin that he had been going about 60-65 mph when he saw Werner's car approaching the intersection from the south. He slowed down to around 50 mph, wondering if the other vehicle was going to slow down or stop, but it did not. He said Werner's vehicle was doing "45 at the slowest" at the time of the crash. This statement was directly contradicted by the police investigation and the physical evidence. Specifically, FHP Traffic Homicide Investigator Parnell estimated that Werner's *947 car was traveling between 10 and 15 mph at the time of the crash because the entire crash site was contained within the intersection. He testified that her car could not have been traveling 45 mph because the cars would have traveled a greater distance from the initial crash site at that speed. Additionally, Stires' statements that he had the green light were made at or near the time when tests showed a blood alcohol level of .176 and by a person with an obvious interest in the outcome of any investigation or criminal proceeding.
On the other hand, the only other eyewitness, Ken Benson, testified that he was traveling south on Olancha Road and noticed that his light was green. He thought this was unusual because the light was "always red when I come through here." Benson saw a northbound vehicle on McKethan that had slowed to a stop in the left turn lane. Benson said the oncoming vehicle had plenty of room to turn before he approached the intersection and began to make the left turn onto SR 50 when another car "came from out of nowhere" and there was "an explosion." He estimated the northbound vehicle on McKethan could not have been going more than 15 to 20 mph at the time of impact because it had just been at a dead stop.
Benson's testimony regarding the light was corroborated by Hernando County Traffic Supervisor David Bland, who testified that the traffic light at the intersection goes into "green rest" to give the east- and westbound traffic on SR 50 the right-of-way until a north- or southbound vehicle trips a detector on Olancha or McKethan Roads. When that happens, the light for SR 50 turns yellow, then red, and when it has been red for "so many seconds," it turns green for the north- and southbound traffic. Thus, Werner's vehicle would have tripped the detector by pulling into the left turn lane, thereby causing the light to change, which is what Benson observed as he approached the intersection. Additionally, Benson's testimony regarding the speed of the northbound vehicle was corroborated by Corporal Parnell's testimony mentioned above.
Stires argues that Benson's testimony was undermined by the fact that Benson misidentified Stires' Jeep as the northbound vehicle on McKethan and Werner's Toyota as the eastbound car on SR 50. He also argues that Benson's testimony was not credible because he did not contact the police until several days after the crash, and when he did, he failed to mention that he had been drinking that night. At trial, Benson denied drinking or going out prior to observing the crash, but another witness, Ronald Greene, testified that he had been at a bar with Benson earlier in the evening.
Despite the problems with Benson's testimony, both sides presented the issue squarely to the jury: If Stires had the green light, he did not cause or contribute to the crash and was not guilty of DUI manslaughter. If he ran the red light, he did cause the crash and was guilty of DUI manslaughter. It was the jury's prerogative to believe, based on the testimony and physical evidence presented, that Stires ran the red light.
An examination of the impermissible evidence reveals that the prosecutor's statement was an isolated comment. Additionally, the trial court gave an immediate curative instruction, telling the jury that the lawyer's arguments were not the law of the case, that he would instruct them on the law of the case. See, e.g., Bush v. State, 809 So.2d 107, 116 (Fla. 4th DCA 2002) (prosecutor's alleged burden-shifting comments not harmful where trial judge gave curative instructions on burden of proof); Williams v. State, 754 So.2d 724, *948 725 (Fla. 4th DCA 1999) (prosecutor's comment on defendant's failure to call witness not harmful where trial judge sustained objection and gave a curative instruction); Thomas v. State, 726 So.2d 369, 372 (Fla. 4th DCA 1999) (explaining that a prosecutor's comment that the defendant has failed to call a witness is improper but does not mandate per se reversal, and holding that although such error occurred, trial court was correct in denying motion for mistrial because after state's comment the trial court provided a curative instruction thereby removing any prejudicial taint).
Stires distinguishes the instant case, noting the trial judge failed to sustain his objection. In fact, Stires argues that the judge's comment that "I'm not saying there's anything that has been done wrong here," was equivalent to overruling his objection. In addition, the instruction given in the instant case was less direct and less forceful than those given in the cited cases. It did not instruct the jurors to disregard the previous comment.
Nevertheless, the trial judge's instruction emphasized that any instruction on how to apply the law would come from him and that the lawyers' arguments should not be regarded as such. Moreover, immediately following the judge's curative instruction, the prosecutor removed any doubt as to the meaning of his prior statement, telling the jury:
As I said, we have to prove beyond a reasonable doubt that the defendant caused or contributed to the cause of death or the injury. And the heart of the case is the defendant ran the red light.
The judge's curative instruction, combined with the prosecutor's acknowledgment of the burden of proof, removed any possibility that the jury may have misinterpreted the prior statement to mean that Stires had the burden of proof. Accordingly, we conclude the error was harmless.
AFFIRMED.
SHARP, W., J., concurs.
HARRIS, J., concurs specially in result only.
NOTES
[1] SR 50 runs east and west. U.S. Highway 98 runs north and south. On the north side of SR 50, Highway 98 is also called Olancha Road. On the south side of SR 50, it is called McKethan Road.
[2] Benson misidentified Stires' Jeep as the northbound vehicle on McKethan and Werner's Toyota as the eastbound car on SR 50.