876 So.2d 599 (2004)
Gerald Andrew CRUMBLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-2326.
District Court of Appeal of Florida, Fifth District.
June 4, 2004.
*600 C. Michael Barnette, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, C.J.
Gerald Crumbley appeals the judgment and sentence he received after the jury found him guilty of aggravated assault with a deadly weapon. Crumbley contends that he was denied a fair trial and deprived of due process when his wife, the victim, testified regarding prior acts of violence committed by Crumbley in violation of an order in limine. We affirm.
A long history of acrimony and marital discord between Crumbley and his wife served as the catalyst for the quarrel between the two that culminated in Crumbley's arrest, conviction and imprisonment. As the argument escalated, the wife became terrified of the belligerent Crumbley. In her attempt to retreat from him, she became entrapped in a corner of the home where Crumbley, in the presence of their son, held a knife to her throat and threatened to kill her if she proceeded with plans to divorce him.
Prior to Crumbley's trial, the trial court entered an order in limine that precluded the wife from disclosing prior acts of violence committed against her by Crumbley. During the trial, however, the wife alluded to Crumbley's past conduct, but stopped short of revealing any details because she testified that she was precluded from doing so. Specifically, the wife testified as follows:
Well, Andy always goes through a period after he gets real angry where he'll start pacing, so that's what he was doing, he was pacing back and forth between the kitchen and the table. And I had at that time seated myself in the swivel chair at the computer, and I looked at my son, and he was looking at me, and I went, (indicating). And afterwards  Christopher waited a few minutes and then got up, told his dad  he grabbed the phone book, and his dad said what are you doing, he said I'm gonna call my friend Dillon, and then he proceeded to go back into our back bedroom.
The following testimony was in response to questions asked by Crumbley's attorney relating to the wife's involvement with another person and why the son did not come to her aid during the incident:
[Defense Counsel]: Your state of mind at the time ... was that you loved Andy or you didn't love Andy?
[Wife]: I can't  I'm limited to what I can tell you because I can't go  I can't go back to what happened previously to cause me to want the divorce.
...
He was going through one of his quiet periods, a time where he was being good. And I wanted the divorce because he was a violent man. He had threatened me in the past. He promised me 
...
My son is terrified of his father. See, there again I have to go back and explain some things that happened.
These revelations are the basis for Crumbley's argument that he was denied due process and a fair trial. The State asserts, *601 despite the order granting the motion in limine, that Crumbley's failure to object to this testimony at trial waives his right to raise the issue on appeal.
The courts have consistently held that in order to preserve an error for appellate review, an objection must be made when the error occurs. F.B. v. State, 852 So.2d 226 (Fla.2003). Commonly referred to as the contemporaneous objection rule, the rationale for its application is two-fold: 1) to require an objection at the time the error is committed to give the trial court the opportunity to correct it; and 2) to prevent a litigant from allowing an error to go unchallenged so it may be used as a tactical advantage later. Id. Numerous decisions hold that despite a motion in limine to exclude certain evidence, a contemporaneous objection must nevertheless be made at the time an attempt is made to introduce the evidence. The vast majority of decisions that have applied this rule have done so when the motion in limine was denied.[1] The court in Coffee v. State, 699 So.2d 299 (Fla. 2d DCA 1997), extended application of the contemporaneous objection rule to instances where the motion in limine was granted and then violated during the course of the trial. See also Jennings v. State, 744 So.2d 1126 (Fla. 4th DCA 1999) (finding that defense counsel's failure to offer a specific objection to evidence admitted after the court receded from a previously granted order in limine waived the issue for review). It is not necessary for us to decide whether to adopt the rationale of Coffee and require a contemporaneous objection after a motion in limine has been granted because our review of this record leads us to conclude that the errors of which Crumbley complains are harmless.[2]
The standard for harmless error analysis emanates from the decision in State v. DiGuilio, 491 So.2d 1129 (Fla.1986). See Williams v. State, 863 So.2d *602 1189 (Fla.2003).[3] The state must bear the burden, as the beneficiary of the error, to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, stated alternatively, that there is no reasonable possibility that the error contributed to the conviction." Stires v. State, 824 So.2d 943, 946 (Fla. 5th DCA 2002) (citing DiGuilio). In order to focus, as we must, on the effect of the error on the jury, Goodwin v. State, 751 So.2d 537, 542 (Fla.1999), we are obligated to examine the entire record and closely examine the permissible evidence that the jury could have properly relied upon in reaching its verdict. Moreover, we must examine even more closely the impermissible evidence that possibly may have influenced the verdict. DiGuilio; Russell v. State, 844 So.2d 725 (Fla. 5th DCA 2003). Hence we are not permitted to examine only the permissible evidence and determine for ourselves whether a guilty verdict could be sustained. Goodwin.
We have closely examined the testimony of the victim and her son. The son witnessed Crumbley take a knife, back his mother into a corner and threaten to kill her. The son further testified that Crumbley lunged at the victim with the knife and as she ducked out of the way, the tip of the knife struck the wall and broke off. Crumbley eventually returned the knife to the kitchen and the son called 911 for help. When he arrived, the police officer found the victim huddled in the corner where the incident occurred. The officer described the victim as utterly terrified.
We have even more closely analyzed the excerpts of testimony that are the focus of Crumbley's complaints. Essentially this testimony reveals that the wife knew she was unable to discuss the past events that had led her to conclude that she wanted a divorce; that Crumbley was a violent man; and that Crumbley had threatened her in the past. However, based on the testimony presented to the jury in its entirety from all of the witnesses, these are conclusions that the jury could logically make from the permissible evidence admitted. Moreover, the victim did not testify to any specific past events or provide details of the marital discord between Crumbley and herself. We conclude that there is no reasonable possibility that the erroneous testimony contributed to the guilty verdict.
We are aware of the recently adopted provision of section 90.104(1), Florida Statutes (2003), which provides in pertinent part that "[i]f the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." This provision was to become effective July 1, 2003. See Ch.2003-259, § 1, Laws of Fla. However, as of the trial date, this provision of the statute has not yet been adopted by the Florida Supreme Court. It is the constitutional prerogative of the Florida Supreme Court, not the Legislature, to enact rules that regulate court procedure. Art. V, § 2(a), Fla. Const. ("The supreme court shall adopt rules for the practice and procedure in all courts...."). Therefore, when the Legislature enacts a procedural rule of evidence, it must be adopted by the supreme court. See State v. McFadden, 772 So.2d 1209, 1213 (Fla.2000) ("As this Court has determined, section 90.610(1) involves a matter of court procedure solely within the province of this Court to enact *603 pursuant to article V, section 2(a) of the Florida Constitution.") (citing State v. Page, 449 So.2d 813, 815 (Fla.1984); Bobb v. State, 647 So.2d 881, 883 (Fla. 4th DCA 1994)); see also In re Florida Evidence Code, 372 So.2d 1369, 1369 (Fla.1979). In order to comply with its constitutional responsibility and recognizing that the evidence code contains both substantive and procedural provisions, the Florida Supreme Court regularly issues opinions adopting or refusing to adopt the procedural rules enacted as amendments to the Florida Evidence Code. See, e.g., In re Amendments to the Fla. Evidence Code, 782 So.2d 339 (Fla.2000) (considering the quadrennial report of The Florida Bar Code and Rules of Evidence Committee concerning amendments to the Florida Evidence Code that were made by the Legislature over the previous four years).
Although it is sometimes difficult to discern the difference between rules of substance and procedure, we conclude that the provision of section 90.104 under consideration is procedural. The question arises whether it is appropriate to apply a procedural rule of evidence enacted by the Legislature but not yet adopted by the supreme court. We note with interest that when the Florida Supreme Court does adopt a previously enacted amendment to the evidence code that is procedural, it usually specifies that the effective date of the rule is the date the Legislature designated as the effective date of the enactment. This fact has led one court to suggest that the rule may be applied by the trial courts pending adoption by the supreme court. See McLean v. State, 854 So.2d 796, 804 n. 7 (Fla. 2d DCA 2003) ("Apparently, the supreme court intends to allow trial courts to utilize a rule of evidence during the period between its legislative enactment and its adoption by the supreme court if the trial court determines that the new rule of evidence is procedural and does not violate the prohibition against ex post facto application. Obviously, the trial court uses the new rule at the risk that it may later be disapproved by the supreme court.") (citation omitted).
This is an issue that we need not decide in the instant proceeding because, as we have previously indicated, the error is harmless. Hence even if this court were to apply the statute, the outcome would be the same.
AFFIRMED.
SHARP, W. and TORPY, JJ., concur.
NOTES
[1] See Lawrence v. State, 614 So.2d 1092, 1094 (Fla.) ("The contemporaneous objection rule applies to evidence about other crimes, and, even if `a prior motion in limine has been denied, the failure to object at the time collateral crime evidence is introduced waives the issue for appellate review.'") (quoting Correll v. State, 523 So.2d 562, 566 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988)), cert. denied, 510 U.S. 833, 114 S.Ct. 107, 126 L.Ed.2d 73 (1993); Shaw v. State, 824 So.2d 265 (Fla. 4th DCA 2002); Morrell v. State, 779 So.2d 304 (Fla. 2d DCA 1999). In Hardwick v. Dugger, 648 So.2d 100, 107 n. 5 (Fla.1994), the court noted:

Although trial counsel filed a motion in limine to preclude testimony relating to Hardwick's drug activities, the trial court denied that motion. Upon introduction of that testimony, trial counsel did not object and did not request that the jury be given a limiting instruction. Failure to object at the time collateral crimes evidence is introduced waives the issue for appellate review, even where a prior motion in limine relating to that evidence has been denied. Correll v. State, 523 So.2d 562, 566 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988).
[2] If an error is properly preserved for review, we apply the harmless error analysis to determine whether reversal is required. On the other hand, if the error is not properly preserved, we must employ the fundamental error analysis to determine whether further review of the alleged error is appropriate. Having already determined that the error is harmless, application of the fundamental error analysis becomes unnecessary. See Reed v. State, 837 So.2d 366, 370 (Fla.2002) ("If the error was not harmful, it would not meet our requirement for being fundamental."); see also Goodwin v. State, 751 So.2d 537, 544 (Fla.1999) (recognizing that harmless error is the converse of harmful error) (citing State v. DiGuilio, 491 So.2d 1129 (Fla.1986)). We therefore conclude that it is unnecessary to decide whether to adopt the rationale in Coffee and extend application of the contemporaneous objection rule to instances where a motion in limine was previously granted because either way, affirmance is appropriate.
[3] We note parenthetically that the provisions of section 924.051(7), Florida Statutes (2003), do not alter the requirement that appellate courts independently review constitutional and nonconstitutional errors for harmlessness pursuant to the DiGuilio standard. Williams; Goodwin.